### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| *PEGGYANN SCHNEIDER,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *No. 2:15-cv-278-NT* |
| | ) | |
| *CAROLYN W. COLVIN,* | ) | |
| *Acting Commissioner of Social Security,* | ) | |
| | ) | |
| *Defendant* | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD"), Supplemental Security Income ("SSI"), and Disabled Widow's Benefits ("DWB") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the administrative law judge erred in (i) overestimating her mental residual functional capacity ("RFC"), (ii) minimizing the impact of intrusive and severe ongoing stalking by a former boyfriend, (iii) failing to give greatest weight to the opinions of agency examining consultant Roger Ginn, Ph.D., (iv) according no weight to the opinions of treating source Sheri Clark, L.C.P.C., (v) finding that the plaintiff's impairments did not meet or equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), and (vi) failing to call a medical expert at hearing. *See*

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 18, 2016, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Plaintiff's Motion To Permit the Plaintiff To Exceed 20 Pages in Her Statement of Errors; and Her Statement of Errors ("Statement of Errors") (ECF No. 13) at 6-20.  She also seeks remand on the basis that there is a reasonable probability that new evidence submitted to the Appeals Council would change the outcome of her case.  *See id*. at 20-24.  I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of vision deficits, affective disorder/depression, anxiety-related disorder/post-traumatic stress disorder ("PTSD") with anxiety, Finding 5, Record at 31; that she had no impairment or combination of impairments that met or medically equaled one of the Listings, Finding 6, *id.* at 32; that she retained the RFC to perform work at all exertional levels but with the following nonexertional limitations: due to vision impairment, she required a brightly lit workplace and large print for any work-related materials, and due to mental impairments, she could understand and remember simple instructions, execute simple tasks on a consistent schedule to complete a workday/workweek, interact with coworkers and supervisors but not the general public, could not work in areas accessible to the public, and could adapt to occasional changes in the routine workplace, Finding 7, *id.* at 34; that, considering her age (58 years old, defined as an individual of advanced age, on her alleged disability onset date, May 15, 2011), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 9-12, *id.* at 38; and that she, therefore, had not been disabled from her alleged onset date of disability, May 15, 2011, through the date of the decision, January 14, 2014, Finding 13, *id.* at 39.  The Appeals Council declined to review the

decision, *id*. at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 3 of the sequential evaluation process, at which step a claimant bears the burden of proving that her impairment or combination of impairments meets or equals a listing.  20 C.F.R. §§ 404.1520(d), 416.920(d); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987).  To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3).  To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. §§ 404.1526(a), 416.926(a).

## I.  Discussion

### A.  Mental RFC Determination/Impact of Stalking

In assessing the plaintiff's mental RFC, the administrative law judge explained:

In terms of the [plaintiff's] alleged impairments, particularly psychological issues, a great deal of this case revolves around the issue of stalking, as reported in testimony, and reflected in post-hearing documents submitted by counsel.  These records show an ongoing problem the [plaintiff] has had with a former partner, Colby Dill, who has been jailed repeatedly due to frequent violations of protection from abuse (PFA) orders issued by Androscoggin County courts.  The [plaintiff] was also compensated by the State for mental health counseling as a result of said stalking, and she has said several times she only feels safe when Mr. Dill is in jail and she knows he cannot bother her.

The undersigned wants to be clear that stalking is a very serious issue, and the matter in general is not discounted.  Nonetheless, in this claim, the undersigned is not entirely persuaded about the level of limitations as presented.  Notably, the [plaintiff] testified, and the record shows[,] that Mr. Dill has been violating PFAs and stalking the [plaintiff] since October 2007, however, the [plaintiff] continued to work successfully for another 4 years.

Record at 35 (citations omitted).   The administrative law judge pointed to additional inconsistencies between the plaintiff's alleged limitations and the record evidence:

1.    Despite her "professed lack of focus or follow through, . . . she uses a computer regularly, corresponding with family and friends by e-mail[,]" "had the mental stamina to travel to Florida in early 2012 where she managed the closing of her ex-husband's estate, where he left her as executor[,]" and "had temporary custody of her granddaughter at the end of 2012 when the teen was involved in court issues and conflicts with family members."  *Id.* (citations omitted).

2.    Although she reported "being essentially 'homebound' due to anxiety and depression that she attribute[d] to unwanted contact with Mr. Dill[,]" she was involved in a serious relationship with an old acquaintance, Dwayne Hallett, that she testified was initiated through Facebook in 2012, and Hallett moved in with her in the spring of 2013, a connection that appeared

"contradictory for an individual who professes that she cannot tolerate socializing in any form." *Id*. at 35-36.

3.      Treatment notes showed that the plaintiff traveled and socialized, went out to dinner with friends, and frequently spent time with her grandchildren. *See id*. at 36. For example, a December 2011 treatment note of Dianne Paine, F.N.P., indicated that the plaintiff had gone out the prior Friday night with friends, attended her grandson's basketball game the next day, and was packing for a trip to Virginia. *See id*. Paine consistently reported that the plaintiff was alert, oriented with a good affect, and responding well to medications and did not recommend more intensive care such as treatment with a psychologist or psychiatrist. *See id*. These reports were inconsistent with claims of incapacitating mental health symptoms. *See id*.

> The administrative law judge explained:
>
> The undersigned finds it more likely that the [plaintiff] experienced a brief period of symptom escalation because of several major upsets in her life over a relatively short period. More specifically, within a few months, the records shows that [she] experienced the sudden death of her brother, she had to place her elderly mother in assisted living, her daughters and grandchildren were involved in the courts and custody issues, she had more encounters with Mr. Dill, and she lost her job. These events, taken as a whole, would cause anxiety in most people, but it does not demonstrate the [plaintiff] [i]s incapable of all work.

*Id*. (citations omitted).

The plaintiff complains that, in finding that she suffered a brief period of symptom escalation, the administrative law judge fundamentally misunderstood the effect that Dill's severe, relentless, and frightening stalking had had on her. *See* Statement of Errors at 6-7. She notes that, although Dill has been incarcerated 22 times as a result of his stalking, it continues even post-hearing. *See id*. at 6. She identifies, as evidence supporting the disabling impact of Dill's stalking, statements from her friend Michaelene Sullivan and her sister Cynthia Anderson, which she asserts are supported by the notes of treating nurse practitioner Paine and treating counselor Clark, police

records detailing Dill's stalking and criminal conduct from June 21, 2007, through May 14, 2013, and the testimony of her daughter Nicole Hamilton. *See id.* at 7-12.

This evidence includes notes by Clark that, as of December 5, 2011, the plaintiff had "significant depression due to multiple stressors," primarily the stalking, and was "having severe trouble concentrating[,]" Record at 788, as of February 20, 2012, she felt that she could not work "as she has no concentration[,]" *id.*, and as of January 29, 2013, she was "finding it hard to concentrate [and was] tearful[,]" *id.* at 769, and a note by Paine that, as of March 11, 2013, the plaintiff's memory was not as good as it used to be, *see id.* at 796.

It is true, as the plaintiff argues, *see* Statement of Errors at 11-12, that the administrative law judge could have found substantial evidence in support of a finding that she suffered disabling mental health limitations. However, I agree with the commissioner that he identified substantial evidence in support of his finding that she did not. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 17) at 2-6. That is all that was required.

First, as the commissioner notes, *see id.* at 3, the administrative law judge acknowledged the seriousness of Dill's actions and criminal conduct, stating that "such behavior can and has instilled anxiety, sadness, and apprehension" in the plaintiff, Record at 37. He assessed functional limitations that derived from the impact of the stalking, including a limitation to understanding/remembering simple instructions and executing simple tasks and a bar against working with the public or in areas accessible to the public. *See* Finding 7, *id.* at 34. As the commissioner points out, the plaintiff identifies no specific limitations she claims were omitted from the RFC determination, thereby falling short of demonstrating reversible error. *See* Opposition at 3; *Dana v. Astrue*, Civil No. 09-514-BW, 2010 WL 3397465, at *3 (D. Me. Aug. 24, 2010) (rec. dec., *aff'd* Sept. 13, 2010) ("At Steps 3 and 4 of the sequential review process,

where the decision about RFC is made and where [the claimant's] testimony is relevant, the burden of proof is on the claimant to provide evidence that [s]he could not have performed work on a more gainful and continuing basis than [s]he had essayed in the past.").

Second, as the commissioner argues, *see* Opposition at 3-5, the administrative law judge identified substantial evidence in support of his mental RFC determination. He gave weight to the mental RFC opinions of two agency nonexamining consultants, Susan Lichtman, Ph.D., and David R. Houston, Ph.D. *See* Record at 37. Both reviewed the available evidence of record, including evidence of the stalking, and opined that the plaintiff should not work directly with the public but was able to understand, remember, and perform simple work tasks and to work with supervisors and coworkers and adapt to routine changes in the workplace. *See, e.g., id*. at 101-06, 132-37. While the plaintiff separately challenges the administrative law judge's weighing of the opinion evidence, *see* Statement of Errors at 12-17, I find no error for the reasons explained below.

Finally, as noted above, the administrative law judge explained that he did not credit the plaintiff's allegations of ongoing disabling limitations as a result of a number of inconsistencies.[2] He reasonably deemed the plaintiff's allegations of disabling concentration/focus limitations inconsistent with her computer use, her ability to serve as executor of her ex-husband's estate in Florida, and her ability to care for her granddaughter, and her level of social activity inconsistent with her claimed disabling mental health limitations, despite the fear and anxiety provoked by Dill. Most significantly, he reasonably found the plaintiff's ability to work for four years after the stalking commenced inconsistent with her claim that the stalking had caused disabling limitations.[3]

---

[2] The administrative law judge found Hamilton's testimony, including her statements that her mother was "mostly a shut in" and was far less outgoing or secure since Dill began stalking her, duplicative. *See* Record at 37 (internal quotation marks omitted).

[3] At oral argument, the plaintiff's counsel contended that the administrative law judge ignored the extent to which his client's activities were curtailed by the relentless stalking, pointing out, for example, that she traveled to Virginia and attended a basketball game only in the company of family members and that she explained that she could go out more

The plaintiff complains that the administrative law judge merely speculated, in the absence of any medical expert testimony, that she experienced a brief period of symptom escalation after several major upsets in her life over a relatively short period. *See* Statement of Errors at 6-7. At oral argument, her counsel contended that her symptoms had instead persisted at this level for years.

Nonetheless, as the commissioner argues, *see* Opposition at 5, the administrative law judge merely acknowledged that the plaintiff had several losses over a short period that the record suggests did lead to a period of symptom escalation, including the sudden death of her brother, the placement of her mother in a nursing home, and her daughters' and grandchildren's involvement in court/custody issues, in addition to Dill's ongoing stalking and criminal conduct, *see, e.g.*, Record at 694-95 (Paine notation of March 30, 2011, that, in wake of brother's death, mother's dementia, Dill's release from jail, and becoming distant with family, plaintiff reported multiple symptoms, including decreased memory and concentration, tearfulness, anger, inability to cope, lack of sleep, and worry, with tearful affect on mental status examination), 763 (Paine notation of January 9, 2012, that plaintiff "lost job as couldn[']t give all due to losses"), 788 (Clark notation of December 5, 2011, that plaintiff "lost her job in May due to her multiple stressors").

As the commissioner points out, *see* Opposition at 4, the administrative law judge supportably found it significant that Paine's treatment notes showed objectively normal mental functioning, in that the plaintiff was consistently noted to be alert, oriented, and appropriately groomed and dressed, with intact thought process, insight, judgment, and memory and good eye

---

when Dill was in jail. *See, e.g.*, Record at 729. Nonetheless, the administrative law judge supportably deemed the plaintiff's activities inconsistent with her report that she was essentially "homebound" due to anxiety and depression. *See id*. at 35-36 (internal quotation marks omitted).

contact, and her affect was noted on many occasions to be normal to bright, *see, e.g*., Record at 36, 738, 740, 744, 746, 749, 754, 757, 759, 763, 798, 803.

At oral argument, the plaintiff's counsel contended that Paine's findings on mental status examination were not reflective of his client's disabling limitations because she was then in a safe environment, interacting with a supportive health care provider.  He argued that, by contrast, she lived in a state of anxiety at home, fearing the next contact with Dill and refusing to go out without a companion.  He asserted that there was no indication that the plaintiff's treating providers, who had diagnosed her with depression and PTSD, did not believe her assertions, and no evidence that she did not experience the symptoms of which she complained, including lack of motivation or focus.  Yet, this argument begs the question of whether, despite the plaintiff's severe mental health impairments, the existence of which the administrative law judge acknowledged, *see* Finding 5, *id*. at 31, she could work with certain restrictions designed to address the impact of the stalking, including a prohibition against working with, or in areas accessible to, the general public, *see* Finding 7, *id*. at 34.  The administrative law judge reasonably interpreted Paine's findings as lending support to his finding that she could.

I find no error in the administrative law judge's assessment of the plaintiff's mental RFC.

## B.  Weighing of Opinion Evidence

### 1.  Dr. Ginn

Following an examination of the plaintiff, Dr. Ginn submitted a report dated August 20, 2012, in which he diagnosed the plaintiff with PTSD, *see id*. at 730, stated that she was "of probably average cognitive capability[,]" *id*. at 729, and noted that she "had some mild difficulty with a short-term memory task[,]" *id*.  He added:

> I think she would have difficulty in her present condition remembering anything, but very simple job-related tasks. . . .  The main barrier to her functioning at the present time would be her significant fear and worry and some associated

depression.  Until the issue with her stalking ex-boyfriend is resolved, I cannot see her being able to function on a regular and consistent basis in the world of work. He has been known to harass her at her places of employment.  She is appropriately involved in some counseling.

*Id*.

The administrative law judge gave "partial weight" to the Ginn report, "where [Dr. Ginn] relied on the subjective reports of the [plaintiff], which is an overestimate of severity that lacks objective corroboration by clinical evidence."  *Id*. at 37.

The plaintiff challenges the administrative law judge's failure to credit Dr. Ginn's conclusions fully, asserting that the Ginn report is consistent with "the substantial and objective clinical evidence" from Clark as well as other evidence of record, including police records, an August 29, 2014, letter from Androscoggin County Sheriff Guy P. Desjardins, the statements of Sullivan and Anderson, and Hamilton's testimony.  Statement of Errors at 13 (emphasis omitted). She argues that consistency with, and support from, clinical evidence is not the sole criterion for giving greatest weight to the opinion of an acceptable medical source: pursuant to Social Security Ruling 96-2p ("SSR 96-2p"), a treating source opinion must be "not inconsistent" with the other "substantial evidence" of record.  *Id*.

As the commissioner counters, *see* Opposition at 7, the administrative law judge reasonably found that Dr. Ginn relied on the plaintiff's subjective allegations as concerned the impact of Dill's stalking on her ability to work, *see* Record at 37, 729, and that this lessened the weight due that portion of the opinion, *see, e.g.,* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.").

He further reasonably deemed that portion of the Ginn opinion lacking in objective corroboration.  As the commissioner notes, *see* Opposition at 8, Dr. Ginn's own findings on

examination do not suggest disabling limitations, *see* Record at 728-29, and the administrative law judge noted that Paine's mental status findings were largely unremarkable, *see id*. at 36. Finally, as the commissioner points out, the administrative law judge relied on opinions of two agency nonexamining consultants, Drs. Lichtman and Houston, who had the benefit of review of the Ginn report and the available treatment notes of Clark, *see* Opposition at 8-9; Record at 37, 101-04, 132-34, buttressing his evaluation of the Ginn opinion, *see, e.g., Preston v. Colvin*, Civil No. 2:13-CV-321-DBH, 2014 WL 5410290, at \*4 (D. Me. Oct. 21, 2014) (administrative law judge was not required to accept agency examining consultant's opinion when she explained her reasons for giving it only some weight and relied on the opinion of agency nonexamining consultant who had reviewed the examining consultant's opinion).[4]

To the extent that the plaintiff relies on SSR 96-2p, *see* Statement of Errors at 13, her reliance is misplaced. The quoted section pertains to treating sources, not examining consultants. *See* SSR 96-2p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2015), at 111. Her reliance on police records, Sheriff Desjardins' letter, the Sullivan and Anderson statements, and the Hamilton testimony, likewise does not help her. As noted above, the administrative law judge found the plaintiff's own allegations partially credible and Hamilton's testimony duplicative. While he did not address the Sullivan and Anderson statements, the same reasoning presumably applies to them. The Desjardins letter, dated August 29, 2014, postdated the issuance of the administrative law judge's decision. *Compare* Record at 39 *with id*. at 563-64. In assessing the reasonableness of the administrative law judge's decision, the court cannot consider the import of evidence that he did not have the opportunity to review. *See, e.g., Mills v.*

---

[4] Drs. Lichtman and Houston both found that the Ginn opinion "appear[ed] to be focused more [on the] report of [the] claimant than [on] observed behaviors during [the] assessment session." Record at 103-04, 134.

*Apfel,* 244 F.3d 1, 5 (1st Cir. 2001) ("[W]e may review the ALJ [administrative law judge] decision solely on the evidence presented to the ALJ.")

The administrative law judge supportably resolved conflicts in the evidence by according only partial weight to the Ginn opinion.

### 2.  Clark

In an email dated December 3, 2012, Clark expressed the opinion that "[d]ue to [the plaintiff's] severe anxiety, depression, inability to concentrate, and disorganized thoughts, she is unable to work at this time."  Record at 772.  She added, "Because of the extent of her condition, this may ultimately be a permanent condition."  *Id.*  She explained that the plaintiff had "been diagnosed with PTSD, including depression and severe anxiety, as a result of trauma stemming from multiple years of stalking[,]" received therapy on a regular basis, and took prescribed medication.  *Id.*

Clark also wrote a letter dated August 15, 2013, in which she stated that she had been seeing the plaintiff on and off in therapy since July 2006 and "on a very consistent basis" since January 2012, and that she had many serious mental health diagnoses, including major depression, PTSD, and anxiety/panic disorder, stemming from years of trauma, "but most recently a very serious stalking case that resulted in multiple arrests and jail time of the perpetrator."  *Id.* at 841. She stated:

> These years of trauma ha[ve] now left [the plaintiff] with unrelenting depression and anxiety, despite continual individual therapy and many trials of different medications.  She frequently has panic attacks leaving her home and often finds basic ADL's [activities of daily living] difficult.  She often suffers from fatigue, tearfulness, lack of motivation, feelings of emptiness, and hypervigilence.
>
> It is my opinion that due to the extreme nature of these symptoms and the lack of consistent positive results with extensive therapy and medication, . . .[the plaintiff] will not be able to return to work for the foreseeable future.

*Id.*

The administrative law judge gave "no weight" to the December 2012 statement and "little credence" to the August 2013 letter.  He explained:

> . . . First, Ms. Clark is not a qualified medical source per Agency standards (20 CFR §§ 404.1513(d) and 416.913(d)), nor is it within her purview to evaluate whether the [plaintiff] retains the capacity for work; that determination is reserved to the Commissioner (SSR 96-5p).
>
> More significantly, though, Ms. Clark's proposal that [the plaintiff] has "many serious mental health diagnoses" due to "years of trauma [that cause] unrelenting depression and anxiety [with a] lack of consistent positive results [despite] extensive therapy and medication" is quite inconsistent with Ms. Clark's own data, and with the record as a whole.  Of note, the counselor's first letter in 2012 was offered soon after the [plaintiff] assumed temporary guardianship of her teenage granddaughter.  As already noted, the record does not substantiate "extensive" therapy or various medications.  Rather, the [plaintiff] sees Ms. Clark twice a month; and she has medication management quarterly with Ms. Paine, who prescribes low dosages of Bupropion and Fluoxetine and often notes the [plaintiff] [i]s responding well to treatment.  This is hardly indicative of a need for extreme psychological care.

*Id*. at 36 (citations omitted).

"The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater,* 172 F.3d 31, 35 (1st Cir. 1999) (citations omitted).

The plaintiff argues, in effect, that the administrative law judge's analysis of the Clark opinions is flawed in all three respects.  *See* Statement of Errors at 14-17.  She contends that the administrative law judge (i) misapplied Social Security Ruling 06-03p ("SSR 06-03p") in according no weight to the Clark opinions because she was not an acceptable medical source, (ii) mischaracterized the August 15, 2013, opinion as a "proposal," (iii) wrongly accorded no weight to the opinions on the basis that they addressed whether the plaintiff was disabled, a matter that is reserved to the commissioner, when they also touched on the severity and functional effects of her impairments, (iv) judged matters entrusted to experts in stating that the record did not substantiate "extensive" therapy or medication and was "hardly indicative of a need for extreme

psychological care," and (v) erroneously stated that Clark's opinions were not supported by her own data or by the record as a whole.  *See id.* (citations and internal quotation marks omitted). She maintains that the Clark opinion, if properly considered, should have been accorded substantial or significant weight.  *See id.* at 17.  I find no error.

First, the administrative law judge did not reject the Clark opinions solely on the basis that Clark was not an acceptable medical source, in violation of SSR 06-03p.  As the plaintiff points out, SSR 06-03p provides that opinions of such sources "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."  Statement of Errors at 15 (emphasis omitted) (quoting SSR 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2015), at 330).  Yet, as counsel for the commissioner observed at oral argument, SSR 06-03p also states that "[t]he fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' are the most qualified health care professionals."  *Id.* at 332 (citation and internal quotation marks omitted).

In addition, while opinions from non-acceptable medical sources such as Clark are entitled to consideration, SSR 06-03p does not indicate that they are entitled to any particular weight. Rather, it directs that adjudicators "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  *Id.* at 333.  The administrative law judge did so here.

Second, while the administrative law judge mischaracterized one of Clark's statements in her August 2013 letter as a "proposal," Record at 36, the plaintiff does not demonstrate that the error was of any consequence.

Third, the administrative law judge correctly characterized the Clark opinions as bearing on the question of whether the plaintiff was disabled – a matter reserved to the commissioner with respect to which even the opinion of a treating physician who is an acceptable medical source is entitled to no particular weight. *See id.*; 20 C.F.R. §§ 404.1527(d)(1) & (3), 416.927(d)(1) & (3); SSR 06-03p at 331 (the factors set forth in sections 404.1527 and 404.927 apply only to the evaluation of medical opinions from acceptable medical sources, although they can be applied in considering opinions from non-acceptable medical sources).  While Clark described some of the plaintiff's symptoms in expressing the view that she was unable to work, *see* Record at 772, 841, the administrative law judge adequately took them into account in deeming the Clark opinions inconsistent with her own treatment notes and with other evidence of record, *see id.* at 36.

Fourth, the administrative law judge did not exceed the boundaries of his competence as a layperson in assessing the length and intensity of treatment.  As the commissioner contended, both in her brief and through counsel at oral argument, *see, e.g.*, Opposition at 11-12, an administrative law judge permissibly may consider such evidence in assessing the weight to be given the opinion of a treating source as well as the credibility of a claimant's allegations, *see, e.g.*, 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), 416.927(c)(2)(i)-(ii) (listing length of treatment relationship, frequency of examination, and nature and extent of treatment relationship among factors relevant to adjudicator's assignment of weight to medical opinion evidence); *id.* §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v) (factors relevant to the evaluation of symptoms such as pain include side effects of any medication taken to alleviate pain or other symptoms, and treatment other than

medication).  The administrative law judge made a permissible common-sense determination that the plaintiff's twice-monthly sessions with Clark and quarterly sessions with Paine did not substantiate that she required "extensive" therapy or had "a need for extreme psychological care." Record at 36.

Fifth and finally, the administrative law judge supportably deemed Clark's opinions inconsistent with Clark's own treating notes and other substantial evidence of record.  As the administrative law judge observed, *see id*. at 35-36, Clark's treatment notes documented activities seemingly at odds with the plaintiff's claimed disability, including traveling to Florida and acting as the executor of her ex-husband's estate, assuming guardianship of her granddaughter, and pursuing a relationship with Hallett, *see, e.g., id*. at 769, 777, 788.  As discussed above, the administrative law judge reasonably deemed the Clark opinions inconsistent with other evidence including Paine's treatment notes, which tended to show objectively normal mental functioning.

Remand is not warranted on the basis of the administrative law judge's handling of either the Ginn or Clark opinions.

### C.  Listings Determination

The administrative law judge considered whether the plaintiff's mental impairments met or medically equaled the criteria of either Listing 12.04, pertaining to affective disorders, or Listing 12.06, pertaining to anxiety-related disorders, and concluded that they did not.  *See id*. at 32-33. He determined that the plaintiff's mental impairments did not meet the so-called "paragraph B" criteria of the Listings because they did not result in at least two marked limitations or one marked limitation plus repeated episodes of decompensation.  *See id.* at 33.  He found instead, that the plaintiff had only a mild restriction in activities of daily living, moderate difficulties in social

functioning, moderate difficulties in concentration, persistence, or pace, and no evidence of any episodes of decompensation of extended duration. *See id.*

The plaintiff argues that this determination was wrong, asserting that Clark's records, as well as Sullivan's statement, demonstrate that Dill's stalking severely damaged her concentration, persistence, or pace, made her afraid to leave home, and sapped her energy to perform daily activities. *See* Statement of Errors at 17-18. She contends that she had marked difficulties in social functioning and concentration, persistence, or pace, meeting Listing 12.06(A)(1), (2), and (5). *See id.* at 18.

In the alternative, she asserts that the administrative law judge's decision not to call a medical expert at hearing deprived of her of the opportunity to show that her mental impairments equaled that Listing, violating her due process rights. *See id.* She adds that a constitutional violation cannot be harmless error. *See id.*

As the commissioner argues, *see* Opposition at 12-13, the Listings determination is supported by substantial evidence. In addition to discussing the evidence that he found supported his assignment of only mild and moderate limitations, *see* Record at 33, the administrative law judge relied on the opinions of Drs. Lichtman and Houston, both of whom reviewed available evidence of record that included Clark's notes through July 2012, in the case of Dr. Lichtman, and through November 2012, in the case of Dr. Houston, *see id.* at 101-03, 132-33.

The plaintiff bore the burden of proving that her impairments met or equaled a Listing. *See, e.g.*, *Dudley*, 816 F.2d at 793. As she concedes, *see* Statement of Errors at 18, she did not have the right to require that the administrative law judge call a medical expert at hearing, *see, e.g., Kresge v. Astrue*, Civil No. 09-248-B-W, 2010 WL 2024968, at *3 (D. Me. May 18, 2010) (rec. dec., *aff'd* June 22, 2010) ("[W]hether to consult a medical advisor at the hearing is always a

matter within the administrative law judge's discretion and therefore the 'failure' to do so is not cause for remand.").

Finally, even had there been a due process violation, remand is not warranted unless resultant prejudice is shown. *See, e.g., Lewis v. Astrue,* No. 06-121-B-W, 2007 WL 2021912, at *5 (D. Me. July 11, 2007) (rec. dec., *aff'd* Aug. 15, 2007). The plaintiff does not attempt to make this showing. *See* Statement of Errors at 18.

### D.  Failure To Call Medical Expert at Hearing

The plaintiff next argues that the administrative law judge erred in failing to call a medical expert at hearing because he made findings that exceeded his competence as a layperson, to wit, that it was more likely that she "experienced a brief period of symptom escalation because of several major upsets in her life over a relatively short period" and that the record did not substantiate "extensive" therapy or medication and was "hardly indicative of a need for extreme psychological care." Statement of Errors at 19-20 (quoting Record at 36).

I have considered and rejected this premise in connection with the plaintiff's other points of error, above. This additional point of error affords no basis for remand.

### E.  Bid for Remand on the Basis of New Evidence

The plaintiff finally seeks remand on the basis that there is a reasonable probability that new evidence submitted with this appeal would change the outcome of her case. *See* Statement of Errors at 20-24. She relies on three exhibits submitted for the first time to the Appeals Council, *see* Record at 5:

1.      Her affidavit dated August 20, 2014, to which she appended an exhibit detailing the dates on which Dill continued to stalk and harass her, her family, and her friends since the date of the administrative law judge's decision. *See id.* at 560-62;

2.      The August 29, 2014, statement of Sheriff Desjardins expressing his opinion, based on his many interactions with the plaintiff in connection with Dill's stalking and a presentation that she made to a group called Safe Voices on that subject, that Dill's "harassment, fear, and intimidation . . . [have been] [t]o such a degree [that the plaintiff] had to stop working and carefully plan any family visits and activities[,]" that Desjardins had never seen a case in his 38 years in law enforcement in which an abuser had caused negative effects to such a degree and with such consistency, that Dill will always be a danger to the plaintiff and will never change his obsessive behavior toward her, and that he has made her life one "of fear and anguish[.]" *Id.* at 563-64; and

3.      A questionnaire completed by Clark on August 27, 2014, in response to the administrative law judge's decision, in which she stated that (i) the plaintiff had exhibited persistent, chronic symptoms that included anhedonia, fear of being in public, generalized persistent anxiety, vigilance and scanning, difficulty concentrating or thinking, and difficulties with activities of daily living when her depression was severe, *see id.* at 860-61, (ii) the plaintiff's limitations in social functioning were marked, rather than moderate as found by the administrative law judge, given that she generally can participate in the events noted in the decision only with careful preparation, the presence of a companion, and anti-anxiety medication, *see id.* at 862, (iii) the plaintiff did not experience only a short period of symptom escalation, as found by the administrative law judge, *see id.* at 863, (iv) the plaintiff's concentration is poor and she likely could not handle any work stress, *see id.* at 864, and (v) the plaintiff is genuine and honest, *see id.* at 865.

In *Mills v. Apfel,* 244 F.3d 1 (1st Cir. 2001), the First Circuit made clear that there are two circumstances in which remand based on submission of evidence subsequent to the issuance of an administrative law judge's decision is appropriate: (i) when that evidence is new and material *and*

a claimant demonstrates good cause for its belated submission and (ii) when, regardless of whether there is such good cause, the Appeals Council has given an "egregiously mistaken ground" for its action in refusing review in the face of such late-tendered evidence. *Mills,* 244 F.3d at 5-6.

The plaintiff invokes the first of the two *Mills* bases for remand, arguing that the exhibits are material because they demonstrate that Dill's stalking has continued unabated since the administrative law judge's decision, clarify that she did not merely experience a short period of symptom escalation and that Dill's conduct has had a hugely negative and debilitating impact on her since her alleged onset date of disability, and support the need for a new hearing to evaluate, with testimony from an independent medical expert, whether her impairments equal Listings 12.06(A)(1), (2), and (5).  *See* Statement of Errors at 23-24.

As the commissioner rejoins, *see* Opposition at 14-15, the plaintiff's affidavit and chronology and the Desjardins statement are cumulative of evidence the administrative law judge both considered and credited that the plaintiff was subject to severe ongoing stalking, *see* Record at 35-37; *Evangelista v. Secretary of Health & Human Servs*., 826 F.2d 136, 139 (1st Cir. 1987) (to establish that new evidence is material, claimant must show that it "is necessary to develop the facts of the case fully, . . . is not cumulative, and . . . consideration of it is essential to a fair hearing").

Nor does the Clark questionnaire afford a basis for remand.  As the commissioner observes, *see* Opposition at 17-18, if a claimant were able to obtain Appeals Council review (or remand in court) simply by obtaining an opinion of a medical source disagreeing with the bases for an administrative law judge's decision, it would frustrate the purpose of the requirement that a claimant demonstrate "good cause" for her belated submission of evidence, *see, e.g., Evangelista*, 826 F.2d at 140 ("If a losing party could vault the 'newness' hurdle of § 405(g) merely by retaining

an expert to reappraise the evidence and come up with a conclusion different from that reached by the hearing officer, then the criterion would be robbed of all meaning."); *see also id*. at 141 ("Congress plainly intended that remands for good cause should be few and far between, that a yo-yo effect be avoided – to the end that the process not bog down and unduly impede the timely resolution of social security appeals.").  To the extent the questionnaire contains data or opinions apart from Clark's critique of the administrative law judge's reasoning, the plaintiff fails to explain why it could not have been provided prior to the issuance of the adverse decision.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### NOTICE

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 8th day of May, 2016.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge